UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:13-cv-129-JMH

RACHEAL ELAINE LEWIS                                            PLAINTIFF

v.                                **OPINION & ORDER**

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                          DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Racheal Elaine Lewis, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Social Security benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.**       **OVERVIEW OF THE PROCESS**

On May 27, 2010, an application for Child's Supplemental Security Income ("CSSI") and child's insurance benefits was filed on behalf of Lewis while she was still a minor under the age of 18 [TR 157-67]. Lewis subsequently attained the age of 18 years on August 26, 2010 [TR 16, 42]. Thus, her application was examined under section 1614(a)(3)(C) of the Social Security Act for the period before she turned 18, and under section 1614(a)(3)(A) and 223(d) of the Social Security Act for the period beginning at age 18. *See* 42 U.S.C. § 1382c.

An individual under the age of 18 is disabled under the Social Security Act if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child's impairment satisfies these requirements, the Social Security Administration regulations prescribe a three-step sequential evaluation process:

1. If a child is doing substantial gainful employment, the child is not disabled and the claim will not be reviewed further.

2. If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3. If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.942(a). Once the claimant makes such a showing, an irrebuatable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2nd Cir. 2000)(citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

In order to "meet" a listed impairment at step three, a child must demonstrate both the "A" and "B" criteria of that listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id*. An impairment that shows some but not all of the criteria, no matter how severe, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). However, even if a child's impairments do not "meet"

a listed impairment, they may still be medically or functionally equal in severity and duration of the medical criteria of a listed impairment. 20 C.F.R. § 416.926a(a).

To determine if the impairment(s) is functionally equal to a listed impairment, the regulations focus on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains included in the regulations are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. If a child's impairment(s) results in "marked" limitations in two domains or an "extreme" limitation in one domain and meets the duration requirements, the impairment(s) functionally equals the listings and the child will be found disabled. *See* 20 C.F.R.§ 416.926a(d). The regulations define a marked and extreme limitation as follows:

> (2) Marked limitation.
>
> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> (3) Extreme limitation
>
> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is more than "marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean that a total lack or loss of ability to function. It is the equivalent

of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R.§§ 416.926a(e)(2)(i), (e)(3)(i).

As an adult, an individual is disabled under the Social Security Act if they are unable to "engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3). *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). In determining whether an adult claimant is disabled, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates hers residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id*. The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge

reaches the fifth step without a finding that the claimant is disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id*. Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. THE ADMINISTRATIVE RECORD AND ALJ DECISION

An application for Social Security benefits was filed on behalf of Lewis on May 27, 2010 [TR 157-67]. In her application, Lewis claims she became disabled on September 1, 1995 due to moderate hearing loss, delayed speech, and bedwetting [TR 191]. After her initial claim was denied, Lewis requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on November 29, 2011 [TR 35-59]. At that time, Lewis testified that her main problem results from her hearing loss [TR 42]. She also explained that she has problems with her speech and issues with her bladder [TR 43-44]. Lewis further testified that she graduated from high school, in special education classes, and attended speech therapy throughout her schooling [TR 44]. She has never worked [TR 49, 51].

The ALJ also heard testimony from the vocational expert (the "VE"), William Ellis. He was asked to consider the following hypothetical individual that has no exertional limitations, but that has the following nonexertional limitations:

> she can understand, remember and carry out simple instructions, interact with the general public no more than occasionally, read at a fourth grade level, perform math at a second grade level and work in no more than moderate noise levels. She must be able to see people with whom she is expected to communicate and must be permitted to use the bathroom every couple of hours.

[TR 52-53]. Based on these hypothetical limitations, and assuming an individual with Lewis' vocational factors, the VE testified that she could perform medium and light exertional jobs such as a kitchen helper and dish washer [TR 52]. The VE also testified that these jobs exist in significant numbers in the national and local economy [TR 53].

After consideration of the entire record, the ALJ issued his decision [TR 11-29]. He began his analysis by following the three-step sequential evaluation process for determining whether, while

under the age of 18, Lewis met the standard for CSSI. At step one, the ALJ found that Lewis had not engaged in substantial gainful activity since the application date [TR 16]. At step two, the ALJ found that before attaining the age of 18 on August 26, 2010, Lewis had the following severe impairments: hearing loss and borderline intellectual functioning [TR 16]. Finally, at step three, the ALJ determined that Lewis did not have an impairment or combination of impairments that met or equaled, or was functionally equivalent to, one of the listed impairments. As a result, the ALJ determined that Lewis was not disabled prior to turning 18.

The ALJ then turned to a review of Lewis' claim for adult SSI, and followed the five-step sequential evaluation process for SSI. In reaching his decision that Lewis was not disabled as an adult, the ALJ first determined that Lewis had not developed any new impairments since attaining the age of 18 [TR 26]. Continuing on to the third step, the ALJ determined that her impairments or combination of impairments were not associated with clinical signs and findings that met or equaled in severity any of the listed impairments [TR 26]. *See* 20 C.F.R. pt. 404, subpt. p, app'x 1. Next, the ALJ determined Lewis' residual functional capacity ("RFC"). An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Lewis has the RFC to perform the exertional demands of light and medium work, with the following nonexertional limitations:

> She can understand, remember and carryout simple instructions, interact with the general public no more than occasionally, read at a fourth grade level, perform math at a second grade level, and work in no more than moderate noise levels. She must be able to see people with whom she is expected to communicate and must be permitted to use the bathroom every couple of hours.

7

[TR 27]. Because Lewis has no past relevant work, the ALJ continued to the fifth and final step. Relying on the testimony of the vocational expert and taking into consideration Lewis' age, educational background, work experience, and RFC, the ALJ found that Lewis could perform a significant number of jobs in the national economy [TR 27-28]. As a result, the ALJ concluded that Lewis was not disabled [TR 28].

Lewis subsequently requested review by the Appeals Council [TR 5-7]. The Appeals Council denied Lewis' request for review on May 23, 2013 [TR 1-3]. She has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

III.  ANALYSIS

Lewis asserts three arguments on appeal. First, Lewis argues that the ALJ erred in determining that Robert Spangler, Ed.D. is not an acceptable medical source under 20 C.F.R. §§ 404.1513(a) and 416.913(a). Dr. Spangler is a psychologist who examined Lewis on September 26, 2011 at the request of her attorney [TR 650-57]. He opined that she had a number of mental limitations, including a "seriously limited" ability to relate to coworkers, deal with the public, use judgment, and deal with work stress [TR 655-57]. He also opined that Lewis "meets or equals" Listing 12.05C and had personality disorder [TR 657]. The ALJ, however, rejected these findings, in part, because he believed that Dr. Spangler was not an acceptable medical source under 20 C.F.R.§§ 404.1513(a) and 416.913a.

While the Commissioner concedes that Dr. Spangler is an acceptable medical source under the regulations, the Commissioner argues that the ALJ gave sufficient other reasons for rejecting his opinion. For example, when considering Dr. Spangler's opinion at step three of the CSSI disability

sequential evaluation, the ALJ noted that although Dr. Spangler had examined Lewis, he had "no special knowledge" of her. In addition to his limited treating relationship with Lewis, the ALJ also noted that Dr. Spangler's opinion was inconsistent with evidence of her adaptive functioning. Specifically, the ALJ noted that Lewis "is capable of reading, writing, communicating effectively, following instructions and answering questions of simple to mild complexity. . . [she also] engages in computer activities, including regular exchange of emails with friends and family, listening to music . . ., assists with chores, including cooking, laundry, cleaning." Furthermore, the ALJ noted that Lewis can "use public transportation, care for her personal needs, maintain a schedule, and manage medications" as well as "make and maintain friendships" [TR18].

While the ALJ erred in determining that Dr. Spangler is not an acceptable medical source, this error is harmless in light of the other reasons offered by the ALJ. Certainly, Dr. Spangler's limited examining relationship with Lewis factors into the weight the ALJ must give to his opinion. *See* 20 C.F.R. § 416.927(c). Additionally, the ALJ determined that Dr. Spangler's opinion was inconsistent with other evidence, particularly Lewis' activities of daily living. Thus, the ALJ's error was harmless and remand is not appropriate based simply on this error. *See Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)(when "remand would be an idle and useless formality" courts are not required to "convert judicial review of agency action into a ping-pong game").

Next, Lewis argues that the ALJ erred at step three of both sequential evaluation processes. Specifically, Lewis contends that she meets the criteria for Listing 112.05 (Intellectual disability, child) and Listing 12.05 (Intellectual disability, adult). The ALJ first addressed the listings when

9

performing the three-step sequential evaluation process application to children. Listing 112.05 provides as follows:

> Intellectual Disability: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
> A.   . . . for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02;
> OR
> B.   Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded.
> OR
> C.   A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> D.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
> OR
> E.   A valid verbal, performance, or full scale IQ of 60 through 70 and:
> . . . 2. For children (age 3 through attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02.
> OR
> F.   Select the appropriate age group:
> . . . (2) For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1 §112.05D. Lewis contends that she meets the criteria for D. Specifically, she points to three occasions, with three different test administrators, where she scored a verbal comprehension index of 70, thus satisfying the first prong of D. She then argues that her hearing deficiency and speech and language deficits satisfies the second prong by "imposing an additional and significant limitation of function."

The ALJ determined that Lewis did not meet this Listing because she did not show deficits in adaptive functioning as required by the second prong of D. In fact, the ALJ noted that her "daily activities and functioning in general indicates that her adaptive functioning exceeds levels reflected in formal testing" [TR 18]. For example, the ALJ cited her ability to read, write, and communicate effectively; follow instructions and answer questions; use the computer; do chores; take public transportation; care for her personal needs; spend time with family and friends; and have a boyfriend [TR 18]. So while Lewis did meet the testing component of Listing 112.05D, substantial evidence supports the ALJ's decision that she did not have any additional and significant limitation of function, and thus her impairments did not meet or equal Listing 112.05D.

The ALJ also considered whether Lewis, before attaining age 18, had any impairment that functionally equaled the listings. The ALJ specifically considered Lewis' hearing loss and its impact on her speech. However, with the help of her updated hearing aids, the ALJ determined that she can hear sounds and speech generated near her, and that as a result, her hearing, speech and language disorder only causes mild difficulties. He also noted that her bladder issues were not considered severe. He then turned to the six domains of function, finding a marked limitation in only one domain - acquiring and using information. In all other domains, the ALJ determined that Lewis had a less than marked limitation or no limitation [TR19-20]. Lewis has not challenged any of these findings related to functional equivalence. Accordingly, she has waived any challenge to the ALJ's finding that her impairments are not functionally equivalent to any listing. *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)(stating that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" and that

11

"[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

The ALJ then turned to the period following Lewis' eighteenth birthday. The listing for Intellectual Disability for an adult is contained in Listing 12.05. It provides as follows:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D or satisfied.
> A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded.
> OR
> B.  A valid verbal performance, or full scale IQ of 59 or less
> OR
> C.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>   1.  Marked restriction of activities of daily living; or
>   2.  Marked difficulties in maintaining social functioning; or
>   3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>   4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. Although not verbatim to the child listing, Listing 112.05D and Listing 12.05C are nearly identical.

The ALJ determined that Lewis has not developed any new impairment or impairments since the attainment of age 18. Because Lewis' condition remained stable throughout the relevant period, the ALJ did not repeat the previous analysis. The ALJ did reject Dr. Spangler's opinion that Lewis might have dependent personality disorder because there is no evidence that Lewis has ever been

referred for or sought psychological treatment or that a treating provider has ever diagnosed her with any type of emotional disorder [TR 26]. Even if the Court were to accept Dr. Spangler's opinion, it simply demonstrates a conflict in the evidence related to Lewis' adaptive behavior. It does not change the fact that substantial evidence supports the ALJ's finding that Lewis' impairments do not meet or equal Listing 12.05C due to the lack of deficits in her adaptive functioning.

Finally, Lewis argues that the record is insufficient or incomplete, thereby denying her the ability to fairly state her claim. A review of the transcript of the hearing before the ALJ on November 29, 2011 [TR 35-59] reveals that the transcriptionist marked several of Lewis' responses "Inaudible." However, Lewis has failed to show any prejudice. She has not identified any testimony that should have been included that was not. Furthermore, it does not appear that the ALJ had any difficulty understanding Lewis at the hearing. Finally, the ALJ found that Lewis' statements were not entirely credible anyway [TR 20, 27]. "Absent a showing of 'clear prejudice' as a result of alleged deficiencies in the conduct of an administrative hearing, [a claimant] is not entitled to reversal or remand on that basis." *Adams v. Heckler*, 786 F.2d 1163, 1986 WL 16517 *1 (6th Cir. 1986)(citing *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1052-53 (6th Cir. 1983)).

In sum, Lewis has failed to meet her burden of proving that her condition caused more disabling limitations than those found by the ALJ. The ALJ properly considered the relevant evidence and properly analyzed all the evidence in accordance with the sequential evaluation processes for children and adults. As set out above, substantial evidence supports the ALJ's findings, and his conclusion that Lewis is not disabled within the meaning of the Social Security Act.

## IV.  CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #14] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #15] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This June 12, 2014.



Signed By:

*Joseph M. Hood*

United States Senior Judge